Charles W. Watkins, for appellant.

---

## THE BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS v. WILLIAM M. WILES, CITY TREASURER AND THE CITY OF INDIANAPOLIS.

1. *Title of Statute.*—The text of a statute must be included within the limits of the title.

2. *Revenue Act of 1875 Construed as to Compensation of City Treasurers.*—It was not the design of this act to regulate or to change former laws concerning the compensation of city treasurers, but the design was to provide uniformity as to the time and manner of making and equalizing assessments and collecting taxes for State, county and municipal purposes, except in regard to the *time* of collecting city taxes.

3. *City Treasurers to be Paid by Salaries—Salaries Defined.*—City treasurers are to be paid for general services, not by wages or by fees, but by salaries accurately determined and fixed on some certain basis, by which the amount shall be certain and knowable when fixed. It cannot be estimated on taxes to be collected, in the way of a percentage, although such percentage may be allowed as salary on the amount already levied, this being a certain basis. The council of each city must fix a definite salary, in its sound discretion, to be paid out of any funds available for the general purposes of the corporation.

4. *Fees and Charges in Addition to Salary.*—For special services and expenses incurred in distraining, preserving and removing property taken for non-payment of taxes, the officer may be paid by fees, under the statute of 1861, such as are allowed to constables on execution sales.

Filed June 21, 1881.

Appeal from Marion Superior Court.

Opinion of the court by Mr. Justice Woods.

The errors assigned bring before us for review the rulings of the Supreme Court upon the demurrers to the complaint, whereby it was held that each paragraph of the complaint failed to state a good cause of action. The questions involved in these rulings are, however, not questions of pleading or averment, but entirely of

statutory construction or interpretation, and we therefore deem it unnecessary to set out a copy of the complaint.

The following extracts from the opinion delivered at the special term, states the case clearly, and besides indicating the grounds on which the Superior Court reached its conclusions, will facilitate the presentation of the reasons on which the judgment of this court is based:

"The plaintiff is organized under the provisions of the act of March 3, 1871, 1 Davis 817, which provides for a general system of common schools in cities of thirty thousand or more inhabitants, and for common school libraries therein."

"By the second sub-section of section four of that act, the plaintiff is empowered to levy all taxes for the support of the schools within such city, including such taxes as may be required for paying teachers, in addition to the taxes now authorized to be levied by the General Assembly of this State, and by the general laws thereof."

"The fifth section provides that all levies of taxes made by the board shall be certified to by the city clerk, who shall cause the same to be placed on the tax duplicate, and the city treasurer shall collect the same as city taxes are collected, and shall once in each month pay over all such taxes so collected to the treasurer of the board of school commissioners of such city."

"By the third section of the act of February 13, 1877 (Regular Session 1877, page 15), the board is restricted to a levy of twenty cents on the hundred dollars; but a proviso allows the same levy for library purposes, as did the act of March 3, 1871."

"This action was instituted to recover a percentage on the amount of the school tax levied by the plaintiff, and which the defendant Wiles has detained, under claim thereto, as compensation for collection. The first paragraph of the complaint charges the detention of $1,217.11, as percentage for the collection of delinquent taxes, in the sum of $24,250,60, paid voluntarily; the second and further charge, the detention of $672.82 as percentage on $89,221.88 of current taxes collected; and the third, of $992.08, on the sum of $16,543.74, which was the principal, damages and interest of taxes delinquent and collected by seizure and sale or sale of property."

"The legal sufficiency of the several paragraphs is questioned by the demurrer, and whether the latter is well taken must depend, in the main, upon the force and construction to be given to the various statutory provisions bearing upon the subject presented."

"The second section in the act of March 11, 1875 (1 Davis, 338), provides that the general law of the State, and amendments thereto, for the uniform assessment of taxes, shall apply to all incorporated cities not having special charters, so far as applicable; and it is also provided that all city taxes shall be payable on or before the third Monday in April in each year.

"In the general tax law referred to—the act of December 21, 1872,—it is provided that after deducting the amount of taxes returned delinquent, and the collection fees allowed the treasurer, from the several taxes charged on the duplicate, in a just and ratable proportion, the treasurer shall be liable for the balance (sub-section 5 of section 180, 1 Davis, 117). Although the section containing this provision was amended by the act of March 7, 1877, (Regular session 1877, page 142), the fourth sub-section is the same as that to which I have referred."

" By section one hundred and sixty-one of the general law, the treasurer of the county is allowed five *per centum* on the amount of delinquent taxes collected without distraint and sale, payable in just proportion out of each fund collected, and is to be allowed constable's fees and mileage, which is to be collected from the tax-payers."

"The forty-fourth section of the general law relating to cities (act of March 14, 1867, 1 Davis, 285), provides: 'The treasurer shall be entitled to such fees for collections made by distress and sale, and charges for keeping and removing property distrained, as are paid to county treasurers for like services.'"

"The fee and salary act now in force, and that of March 12, 1875, (1 Davis, 467) provides, in section fourteen thereof, that the treasurer shall, in addition to the general salary allowed by section thirteen, charge and receive the further compensation of one *per centum* on the first $100,000 of taxes collected, and one half of one *per centum* on all sums in excess thereof, which shall be paid from the moneys in the treasury belonging to the county, etc., and he shall receive and retain out of all delinquent taxes collected five *per centum* when paid voluntarily and without levy, and six *per*

*centum* if paid after levy; and he is allowed the same fees and charges in case of distraint and sale of goods as received by constables."

After reciting these statutory provisions, the opinion and argument proceed, in the main, on the theory that by force of the act of March 11, 1875, the act of December 21, 1872, for the uniform assessment and collection of taxes, was made applicable to cities, not only in respect of the manner and time of making the assessment and collection of taxes, but also in respect to the compensation of city treasurers; the court holding that by reason of said enactments the city treasurer was entitled for collecting delinquent taxes to the same per centages, fees and charges as are allowed to county treasurers for like services, but that for collecting current taxes, though the county treasurer was allowed one *per centum*, the city treasurer was bound by the city ordinance, which allowed three-fourths of one *per centum*.

We give verbatim so much of the act of March 11, 1875, as can be claimed to bear upon the present subject of discussion:

"An act legalizing the assessment, equalization, levy and collection of municipal taxes for the years 1873 and 1874, providing that the general law governing State and county taxation, so far as the same provides for the manner and time of making the assessment and collection of taxes, shall apply to incorporated cities and towns, and declaring an emergency," approved March 11, 1875.

"Section 1. Whereas there is no express provision in the act approved December 21, 1872, entitled, 'An act to provide for a uniform assessment of property, and the collection and return of taxes thereon,' that makes the same applicable to incorporated cities and towns; and, whereas, the general law governing cities provides a different time, mode and manner for the assessment, equalization, levy and collection of taxes by cities, owing to which uncertainty of application some cities have acted under the one and other cities under the other law, so that the assessment, levy and collection have not been uniform; therefore, be it enacted, etc." This section proceeds to legalize, in the particulars referred to in the title and preamble, the acts of cities for the years 1873 and 1874.

"Sec. 2. Hereafter the general law of the State, and amendments thereto, approved December 22, 1872, for the uniform assess-

ment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable: *Provided*, that all city taxes shall be paid on or before the third Monday in April in each year."

The title of this act specifically indicates the extent to which it was proposed to apply the general law concerning taxation to cities and towns, and it may well be doubted whether the text can be upheld, if it goes further than the title. *The State* v. *Bowers*, 14 Ind. 195.

We are not, however, of the opinion that this act has any bearing on the questions before us. It was not, in our judgment, the design nor the effect of it in any way to change the law concerning the salary, compensation, fees or emoluments of city treasurers. The purpose of the enactment as shown by its title, preamble and text, was to provide that the general law governing State and county taxation, so far as the same provides for the manner and time of making the assessment, equalization and collection of taxes, shall apply to incorporated cities and towns, except " that all city taxes shall be paid on or before the third Monday in April in each year."

If section 2, providing, as it does, that "hereafter the general law of the State and amendments thereto, approved December 2d, (meaning clearly December 21st), 1872, for the uniform assessment of taxes, shall apply to all incorporated cities and towns not having special charters, so far as the same shall be applicable," stood alone for interpretation, without aid from the title or preamble, we should not deem the inference warranted that the compensation, salary, fees or percentages, allowed in favor of county treasurers should thereafter, in whole or in part, be allowed to city treasurers for like services. It is conceded that Indianapolis has no special charter, but is governed by the general law of cities approved March 14, 1867, (1 Davis's Rev. 1876, pp. 267—314,) and by such amendatory and supplemental laws as have been since enacted.

By section 8 of that act, " The officers of such city shall consist of a mayor, two councilmen from each ward, a city clerk, assessor, treasurer," etc.; and by sections 31 to 44, inclusive, the general duties of the treasurer are defined.

" The 51st section provides that the common council shall,

within one month after the annual election in each year, fix the salaries of all the officers of such city, provided for in this act, and by ordinance provide for the payment of the same, which salaries shall be paid on the first days of January, April, July and October in each year, when so fixed, and shall not be increased during that year."

A clause of section 44 declares that " the treasurer shall be entitled to such fees for collections made by distress and sale and charges for keeping and removing property distrained as are paid to county treasurers for like services ;" and section 71 allows such treasurer certain fees and commissions for collecting assessments for street improvements by sales of lots.

Besides these, there are no provisions for the compensation of city treasurers in the act concerning cities, and, in our opinion, these provisions remain in force, unaffected by the act of March 11, 1875.   The policy of the act of March 14, 1867, was that each city should fix the compensation of its own officers, and we think it clear that that policy has not been abandoned for the sake of substituting the uncertainties and impolicy of fee and salary legislation.

The inquiry before us, therefore, does not lead to a consideration of the various enactments which define the pay or commissions of county treasurers, further than is required by the clause quoted above from section 44.   We need determine only the proper construction of said sections 44 and 51, taken in connection with the act of March 3, 1871, the provisions of which have been already stated sufficiently for our purpose.

The appellant contends for a literal construction of the clause of that act, which, speaking in reference to the taxes levied by the plaintiff, says " the city treasurer shall collect the same as city taxes are collected," while the appellees claim that there is an implied intent that, as an incident to the collection, the treasurer shall have the same pay for such collections as for collecting city taxes proper. This brings us to the question whether, in legal contemplation, there is any pay or compensation allowed the city treasurer, as an incident to his collecting of the city taxes.   In some degree, at least, the solution of this question depends on the proper construction to be given to the 51st section of the law of cities, whereby it

is required that city officers be paid by salaries, to be fixed each year by the city council.   It is admitted in one paragraph of the complaint, and conceded or assumed in the briefs on both sides, that the common council of Indianapolis had provided by an ordinance, that the city treasurer should receive, for collecting taxes not delinquent, three-fourths of one per centum of the amount collected ; and the question is raised and earnestly discussed, whether this ordinance was within the power of the council to pass, and if valid, whether it applied to the taxes collected for the plaintiff.

In the case of *Cowdin* v. *Huff,* 10 Ind. 83, the meaning of the word *salary* was considered, and. it was there said :

"There are now and were, at the adoption of our constitution, three modes in use of compensating persons engaged in the public service, viz: fees, salaries and wages.   These modes are all different, each from the other; and the difference between them has been immemorially well understood.   Fees are the compensation paid for particular acts or services; as the fees of clerks, sheriffs, lawyers, physicians, etc.   Wages are the compensation paid, or to be paid, for services by the day, week, etc.; as for laborers, commissioners, etc.   Salaries are the per annum compensation to men in official and some other situations.   The word salary is derived from *salarium,* which is from the word *sal, salt,* being the article in which the Roman soldiers were paid.   See the dictionaries of Richardson, Webster, Bouvies and Wharton.

"Where the constitution does not provide otherwise, the State may adopt either of these modes of compensating those who may be in her service.   But where that instrument does prescribe a mode, that mode must be followed."

It must be equally clear, that where the law prescribes the mode in which city officers shall be paid, that mode must be followed ; and as this judicial declaration of the meaning of the word in the constitution and laws of this State had been made before the enactment of March 14, 1867, we may fairly presume that the Legislature intended the same meaning of the word as used in section 51 of that act.

Looking to the dictionaries we find, in *Webster's Unabridged,* the word salary is defined to be, " the recompense or consideration stipulated to be paid to a person for services ; annual or periodical

wages or pay; hire;" and the synonyms given are, "stipend, pay, wages, hire, allowance," and in *Worcester's Dictionary* the definition is, "An annual or periodical payment for services, a stipulated periodical recompense, a stipend, wages, hire, allowance." But the context in which the word is used in section 51, aside from authority, leaves no room for debate as to the meaning there intended. An annual salary was meant, of a fixed amount, payable quarterly (in equal installments), and not to be increased during the year for which it was fixed.

It may be, as contended by counsel for the appellees, that this required only that the amount of the compensation be fixed, and does not "limit, qualify or restrict the power of that body to determine, in its discretion, the character of that compensation; of what it shall consist, and from what source to come." It must, however, consist of money derived from sources within the lawful control of the city, and the amount must be specifically stated; or if an attempt be made to fix the salary by an allowance of percentages, the percentages must be allowed on determinate sums, so that the total amount of the salary shall be certain and knowable at the time when fixed. It may be a percentage on the taxes levied, but it can not be on the taxes collected during the year, because that would be uncertain until the end of the year. But it is plain that the Legislature contemplated no such indirect way of fixing a salary; and a salary, whether so fixed or given directly in a sum stated, could not be deemed an incident so connected with the collection of the city taxes, as that, when the act of March 11, 1875, was passed, containing the provisions under consideration, it could have been intended to enlarge that salary in proportion to the amount of taxes collected for or levied by the plaintiff, or that the plaintiff should be liable for a *pro rata* share of the salary, whether fixed in one way or the other.

The constitution requires that the laws be uniform. Counsel for the appellee admit that section 51 is not repealed, and that the city council may still fix a salary for the city treasurer, but claims that such treasurer may, if the common council see fit to so order, receive a percentage, to be fixed by an ordinance, for collecting current taxes not delinquent. Whither does the reasoning lead us? The argument is that the percentage so fixed for collecting the city

tax proper becomes an incident of the collection, and, that by force of
the act of March 3, 1871, it becomes also an incident to the collec-
tion of the taxes of the plaintiff.    But one city may allow one per-
centage and another another, while yet other cities may allow their
treasurers no percentage at all, and so the school corporation of one
city will be compelled to pay one rate, and another another rate,
and others yet, perhaps, nothing, for the collection of their taxes,
or, if anything, then a proportionate part of the fixed salaries al-
lowed their treasurers.    But for determining that proportionate
part no rule has been suggested, and we know of none.    Indeed,
a uniform operation of the law upon the theory of the appellees
seems to be entirely impracticable.

The plain legislative intent manifested in said section 51, was
that the council of each city shall fix the salaries of the officers ac-
cording to the duties and responsibilities of each, and with reference
to such other considerations, such as the expenses of living, the
financial condition of the city and the like, as the council in each
case may deem proper to take into account; and when the act of
March 3, 1875, was passed, imposing on city clerks and treasurers,
the duties required of them in relation to the taxes assessed by the
school boards, it was not designed to give either of them any claim
for services against the school corporation, nor yet was it intended
that they should do the work without compensation, but that the
salaries allowed them from year to year should be adjudged accord-
ing to the work required of them, including the services so re-
quired.    This does the city no harm, for the same people who pay
the city taxes proper pay the school taxes also, and the result is
ultimately the same to them whether the compensation of the officers
come from one fund or another.

There is, therefore, no reason for putting a strained construction
on the law; and there is no authority expressed, or which can arise
by fair implication, for the city or its officers charging any part of
their salaries against the taxes collected for the school corporation,
all of which the law expressly requires to be paid over monthly to
the board of school commissioners.    It is no answer to this to sug-
gest that the requirement to " pay over all such taxes so collected,"
does not include the interest and penalties charged against delin-
quents, and that these exceed the amounts retained by the defend-

ants out of the taxes collected for the plaintiff. The interest and penalties, when accrued or added, are a part of the taxes to which they are incident, and governed by the same law. The power to collect the plaintiff's taxes the same as city taxes, carried with it as an incident to the power, the right to use all means which could be used to collect city taxes, but in no legal sense had the treasurer an incidental right to receive a percentage or other compensation, for making such collections, because his lawful pay was by a salary, and a salary, fixed for services generally, can not properly be deemed to be incident to particular services; nor, without special authority for so doing, could a salary be made incident to the particular services required by any process of apportionment. A part of a salary is for general duties and responsibilities which could not be apportioned except under an arbitrary and authoritative rule. There is no such rule. We conclude, therefore, that for all taxes voluntarily paid, whether delinquent or current, the plaintiff was entitled to the entire sums collected, including the interest and penalties, if any, and the defendants were in the wrong in detaining any part thereof.

It remains to be considered whether a different conclusion is required in reference to collections made by distress and sale of property. This inquiry is applicable to the third paragraph of the complaint only. By the forty-fourth section of the city charter, as we have already seen, the city treasurer, in addition to the salary allowed under the fifty-first section, is "entitled to such fees for collections made by distress and sale, and charges for keeping and removing property destrained, as are paid to county treasurers for similar services." By the fifth section of an act approved May 31, 1861, (Laws of 1861 Special Session p. 93,) which it seems was in force in 1867 when the city charter was enacted, it was provided that county " treasurers shall be allowed for their services in making such collections five *per centum* on the amount of such collections of delinquent taxes, payable in just proportion out of each fund collected, and shall also be allowed constable's fees and mileage from the place of holding elections in each township to the residence of such delinquent tax-payer, which shall be collected from such tax-payer."

But by section 14 of the act of March 12, 1875, concerning fees

and salaries, which had come into force before the collections involved in this suit were made, it was provided that the county treasurers "shall receive and retain out of all delinquent taxes collected five *per centum*, when paid voluntarily and without levy, and six *per centum* if paid after levy; and the treasurer shall be allowed the same fees and charges for making distress and sale of goods and chattels, for the payment of taxes, as may be allowed by law to constables for making levy and sale of property on execution." The twenty-sixth section of the same act prescribes the fees and charges of constables in such cases. 1 Davis' Rev. 1876, pp. 471, 476. Construing these statutory provisions together, it is manifest that the fees and charges allowed the city treasurer by the forty-fourth section of the act of March 14, 1867, are the fees and charges only which are allowed the constable on an execution sale, and do not include the percentages allowed to county treasurers at either rate named. It is equally manifest that these fees and charges are collectible out of the property of the tax-payer in each case, and can be deducted from the amount of the tax, interest and penalty in case only the sum realized was insufficient to pay both. The presumption is that the officer did his duty in levying on property sufficient to pay all that was due, including his own fees and charges; and if in fact that was not so, it can be shown by answer.

We, therefore, conclude that the third paragraph of the complaint, as well as the first, second and fourth, was good, and the demurrers to each should have been overruled.

Judgment reversed with costs, and cause remanded with instructions to proceed in accordance with this opinion.

Elliott, J. absent.

Taylor, Rand & Taylor, for appellants.

John A. Henry, Baker, Hord & Hendricks and R. O. Hawkins, for appellee.